**2008 BNH 020**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 04-11410-MWV |
| | Chapter 7 |
| RCK Modular Homes Systems, Inc., | |
|         Debtor | |
| | |
| Timothy P. Smith, Chapter 7 Trustee, | |
|         Plaintiff | |
| | |
| v. | Adv. No. 06-1132-MWV |
| | |
| Donna George aka Donna Kostandin, | |
| both individually and as trustee of | |
| 15 Appleton Road Trust, | |
|         Defendant | |

*Deborah A. Notinger, Esq.*
*DONCHESS & NOTINGER, PC*
*Attorney for Plaintiff*

*Kenneth J. Gould, Esq.*
*Attorney for Defendant*

## MEMORANDUM OPINION

The Court has before it the chapter 7 trustee's (the "Plaintiff") motion for summary judgment against Donna George, individually and as trustee of 15 Appleton Road Trust (the "Defendant"), brought pursuant to the 11 U.S.C. § 548(a)(1) and N.H. Rev. Stat. Ann. § 545-A:4(I).[1]  The Defendant has objected to the motion.  The Court held a hearing on the matter on September 30 and October 21, 2008, and took it under advisement.

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to the Bankruptcy Reform Act of 1978, as amended through October 16, 2005, 11 U.S.C. § 101 et seq.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

The Defendant is the wife of Richard C. Kostandin (hereinafter, "Kostandin"), and this adversary proceeding arises in RCK Modular Homes Systems, Inc.'s (hereinafter, "RCK") bankruptcy case.  On April 16, 2004, RCK and Kostandin (collectively, the "Debtors") separately filed for bankruptcy protection under chapter 7 of the Bankruptcy Code.  Prior to the petition date, RCK was in the business of selling, delivering, and installing modular homes produced by other companies.  Kostandin served as RCK's sole stockholder, principal, and operator.  On November 6, 2007, the Court substantively consolidated their cases.

On April 14, 2006, the Plaintiff commenced this adversary proceeding against the Defendant and the Debtors' former attorney alleging various causes of action.  That same day, the Plaintiff commenced a separate adversary proceeding against the Defendant and the Debtors' former counsel in Kostandin's individual bankruptcy case (Adv. 06-1133-MWV).  On May 26, 2006, the Court consolidated the two proceedings, designating the instant proceeding as the lead case.  Subsequently, the Plaintiff settled with the former counsel and recovered $125,000, resulting in her dismissal from this adversary proceeding in May 2008.

On July 18, 2008, the Plaintiff filed the instant motion for summary judgment against the Defendant (the "Motion"), who was *pro se*.  On August 7, 2008, the Defendant moved to continue the hearing on the Motion on the grounds that she was trying to retain counsel and needed additional time to

complete discovery.  The Court granted her request.  On September 5, 2008, the Defendant made a

second continuance request, which the Court denied.  On September 30, 2008, the Court held a hearing on

the Motion and continued the matter, giving the Defendant a chance to file an objection.  On October 14,

2008, the Defendant filed her objection.  Shortly thereafter, she retained counsel and filed a third motion

for a continuance and a supplemental objection.  On October 21, 2008, the Court held the continued

hearing.  During that hearing, the Court denied the Defendant's third continuance request, permitted the

Defendant to file a supplemental affidavit, and took the matter under advisement.  On November 4, 2008,

the Defendant filed her supplemental affidavit.


## DISCUSSION

The Plaintiff moves for summary judgment on Counts I through III and VI of the complaints filed

in the consolidated RCK and Kostandin adversary proceedings, requesting a total judgment of $427,975.

The allegations pled in the two complaints differ, however, and the motion for summary judgment refers

to those counts asserted in the RCK proceeding.  Thus, the Court will treat the motion as relating to RCK

only.  In the RCK proceeding, Counts I through III seek to avoid certain transfers for fraud under 11

U.S.C. § 548(a)(1) and N.H. Rev. Stat. Ann. § 545-A:4(I) (hereinafter, "NH RSA").  Count VI requests a

turnover of proceeds of the avoided transfers pursuant to 11 U.S.C. § 542(a).

### I.    **Additional Discovery**

In opposing the Motion, the Defendant alleges that she is now in possession of her personal bank

statements and that she can obtain more records to bolster her defense and challenge the Motion.

However, in denying the Defendant's motions seeking continuances, the Court stated that no additional

time for discovery would be permitted, as this adversary proceeding has been pending since April 14,

2006, and there has been sufficient time for completing discovery.  The Defendant was aware of this

proceeding from the time it was commenced because she filed an answer to the Plaintiff's complaint.  As

such, the Court will decide the Motion based on the record before it, giving no weight to the Defendant's allegations of additional evidence.

## II. <u>Motion for Summary Judgment</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" when "the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." <u>Rodriquez-Pinto v. Tirado-Delgado</u>, 982 F.2d 34, 38 (1st Cir. 1993) (quoting <u>United States v. One Parcel of Real Prop.</u>, 960 F.2d 200, 204 (1st Cir. 1992)). A fact is "material" when it has "the potential to affect the outcome of the suit under the applicable law." <u>Nereida-Gonzalez v. Tirado-Delgado</u>, 990 F.2d 701, 703 (1st Cir. 1993). Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." <u>Maldonado-Denis v. Castillo-Rodriquez</u>, 23 F.3d 576, 581 (1st Cir. 1994). However, once the movant has demonstrated that there is no triable issue of fact, the nonmovant has the burden of showing a genuine material issue. <u>Fed. Deposit Ins. Corp. v. Municipality of Ponce</u>, 904 F.2d 740, 742 (1st Cir. 1990). "[T]he nonmovant cannot avoid summary judgment merely by promising to produce admissible evidence at trial." <u>Rodriquez-Pinto</u>, 982 F.2d at 39. Competent evidence is required, and the nonmovant "must show more than conclusory allegations, improbable inferences or unsupported speculation to establish genuine issues of material fact." <u>Razzaboni v. Schifano (In re Schifano)</u>, 378 F.3d 60, 66 (1st Cir. 2004).

At issue in this Motion are four types of transfers: (1) in December 2002, $48,600 was transferred from RCK's bank account to the Defendant (the "2002 Transfers"); (2) from May 5, 2003, through November 13, 2003, $220,522 was transferred from RCK's bank accounts to the Defendant (the "2003

Transfers"); (3) in September 2003, the Defendant made a $183,853.27 cash downpayment to purchase her residence located in Windham, New Hampshire (the "Downpayment Funds"); and (4) on March 3, 2004, the Defendant received $100,000 when she refinanced her multi-unit parcel of real estate located in Haverhill, Massachusetts (the "Refinancing Proceeds").  The Defendant does not dispute the facts stated above.

### A.     Fraud Claim under 11 US.C. § 548(a)(1)

The Plaintiff seeks to avoid the 2003 Transfers for fraud under 11 U.S.C. § 548(a)(1) in Count I.

Section 548(a)(1) provides:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> >
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> > > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
> > > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1)(A) and (B).  "Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."  Id. § 550(a).

It is undisputed that the Defendant received the $220,522 constituting the 2003 Transfers.  The Plaintiff moves for summary judgment on the grounds that the undisputed facts show that RCK made the

2003 Transfers fraudulently. The Defendant argues that there is a material issue concerning fraud. For the following reasons, the Court finds that the Plaintiff has satisfied her burden of showing that there is no triable issue of fact and that the Defendant's evidence does not raise a material issue.

Constructive fraud may be shown by proving that: (1) the debtor had an interest in property; (2) a transfer of that interest occurred within one year of the filing of the bankruptcy petition; (3) the debtor received less than a reasonably equivalent value in exchange for such transfer; and (4) the debtor was insolvent at the time of the transfer or became insolvent as a result of such transfer. Id. § 548(a)(1)(B). The following undisputed facts show constructive fraud in the instant case. RCK transferred a total of $220,522 from its bank accounts to the Defendant within one year of the petition date, beginning May 5, 2003, through November 13, 2003.[2] (Pl.'s Aff. ¶ 14, Ex. C ¶ 7.) The said funds belonged to RCK. RCK made the 2003 Transfers without receiving any consideration, and there is no evidence of RCK's indebtedness to the Defendant to justify the 2003 Transfers. (Pl.'s Aff. ¶ 16.) Further, RCK was insolvent at the time of the 2003 Transfers or rendered insolvent by them for the following reasons. In the summer of 2003, all of RCK's assets were seized by a sheriff as a result of a lawsuit, one of several actions pending against RCK around that time. (Pl.'s Aff. ¶ 8.) RCK's bank statements and the proofs of claim filed in its bankruptcy case show that RCK was unable to pay its liabilities as they came due. (Pl.'s Aff. ¶ 15.) The Defendant does not dispute the facts stated above.[3] Moreover, there is no dispute that the

---

[2] Of the $220,522 that RCK transferred to the Defendant, $44,900 came from its Citizens Bank account, $110,700 came from its Southern New Hampshire Bank account, and $64,922 came from its BankNorth account. (Pl.'s Aff. ¶ 14.) As evidence of these transfers, the Plaintiff located four checks issued from Citizens Bank, two checks issued from Southern New Hampshire Bank, and four checks issued from BankNorth. (Pl.'s Aff. Ex. C ¶ 7.)

[3] The Defendant disputes the allegation that RCK was insolvent at the time she purchased the Windham residence in September 2003 but fails to raise the insolvency issue in reference to the 2003 Transfers. Nonetheless, even if she had, her evidence of solvency does not help her position. She offers a preconditional approval letter stating that Kostandin met the guidelines to obtain a mortgage in an amount exceeding $1 million dated March 14, 2003. (Def.'s Aff. Ex. 1.) Such document reveals little about RCK's solvency and thus, does not raise a genuine issue regarding its insolvency in 2003.

Defendant is the initial transferee from whom the Plaintiff may recover because RCK made the 2003 Transfers directly to the Defendant.  See id. § 550(a).  Thus, the Plaintiff has satisfied his burden of showing that the 2003 Transfers are avoidable fraudulent transfers.

The Defendant alleges that she reinvested all or most of the $220,522 in RCK within days of receiving the funds, which she argues is a fact that contradicts the allegation of fraud.  In support, she produced evidence that in 2002 through 2004, $116,350 in withdrawals from her personal account correspond to anonymous deposits made into RCK's accounts on or about the same day as the withdrawals.  (See Def.'s Supplemental Aff. ¶¶ 4-6, Ex. C-E.)  However, her evidence shows that the alleged redeposited funds were redeposited as *loans* to RCK from the Defendant.  (See Def.'s Supplemental Aff. Ex. C & E.)  The fact that the Defendant lent RCK the funds that she received from it, does not negate the fraudulent nature of RCK's initial transfers to the Defendant.  Thus, her evidence fails to raise a material issue, and the Plaintiff is entitled to a judgment as a matter of law.  Accordingly, summary judgment is granted on Count I in the amount of $220,522.

### B.      Fraud Claims under NH RSA § 545-A:4(I)

Counts II and III seek to avoid three types of transfers for actual and constructive fraud under NH RSA § 545-A:4(I), respectively: (1) the 2002 Transfers, (2) transfers related to the Downpayment Funds, and (3) the transfer related to the Refinancing Proceeds.  Section 544(b)(1) provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."  11 U.S.C. § 544(b)(1).  To bring a fraudulent claim under section 544(b)(1), the trustee must first show that he has a right to bring the claim.  Turner v. Phoenix Fin. LLC (In re Imageset, Inc.), 299 B.R. 709, 715 (Bankr. D. Me. 2003); Young v. Paramount Commc'ns Inc. (In re Wingspread Corp.), 178 B.R. 938, 945 (Bankr. S.D.N.Y. 1995); Ford v. Blaine (In re Mann), 2006 BNH 032, 3.  This is accomplished by establishing that at the

time of the transfer, (1) there was a creditor holding an allowed unsecured claim and (2) that the creditor

could have avoided the transfer under applicable state law.  In re Mann, 2006 BNH 032, at 3.

Next, NH RSA § 545-A:4(I) provides:

(I) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
whether the creditor's claim arose before or after the transfer was made or the obligation
was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) Without receiving a reasonably equivalent value in exchange for the transfer
or obligation, and the debtor:
(1) Was engaged or was about to engage in a business or a transaction for
which the remaining assets of the debtor were unreasonably small in
relation to the business or transaction; or
(2) Intended to incur, or believed or reasonably should have believed
that he would incur, debts beyond his ability to pay as they became due.

NH RSA § 545-A:4(I)(a) & (b).  The plaintiff has the burden of proving constructive fraud by a

preponderance of the evidence under section 545-A:4(I)(b).  Dahar v. Jackson (In re Jackson), 318 B.R. 5,

13 (Bankr. D.N.H. 2004).  Once a transfer is deemed fraudulent under 11 U.S.C. § 544, the trustee may

recover from "the initial transferee of such transfer or the entity for whose benefit such transfer was made

. . ." 11 U.S.C. § 550(a)(1).

To start, the Plaintiff may bring all three claims.  With respect to the 2002 Transfers, the Plaintiff

established that creditors by the name of Steven and Emily Morse brought suit against RCK in October

2002 to recover over $215,000 for RCK's failure to deliver a modular home.  (Pl.'s Aff. ¶ 8.)  These

creditors filed a proof of claim in RCK's bankruptcy case asserting an unsecured claim, and RCK did not

object.  Further, fraudulent claims are avoidable under NH RSA § 545-A:7.[4]  Thus, there was a creditor

holding an allowable unsecured claim at the time RCK made the 2002 Transfers in December 2002.

Next, with respect to the Downpayment Funds and Refinancing Proceeds, the Plaintiff established that an

_____

[4] "In an action for relief against a transfer or obligation under this chapter, a creditor, subject to
the limitations in RSA 545-A:8, may obtain . . . [a]voidance of the transfer or obligation to the extent
necessary to satisfy the creditor's claim."  NH RSA § 545-A:7(I)(a).

- 8 -

unsecured creditor by the name of George Kung paid RCK $210,736 from March 2003 through January 2004 for a modular home that was never delivered.  (Pl.'s Aff. ¶ 9, Ex. A.)  This creditor filed a proof of claim, and RCK did not object to the claim.  The Defendant does not dispute the facts stated above.  Thus, at the time the Defendant paid the Downpayment Funds to purchase the Windham residence in September 2003 and received the Refinancing Proceeds in March 2004, an unsecured creditor with an allowable claim existed.

### 1.    *2002 Transfers*

It is undisputed that RCK made the 2002 Transfers in the amount of $48,600 to the Defendant in December 2002.  The Plaintiff established facts to support his avoidance claim for the said transfers.  For the following reasons, the Court finds that the Defendant produced sufficient evidence to raise a material issue as to whether the 2002 Transfers were fraudulent.

The Defendant alleges that the 2002 Transfers represent sales commissions owed to her by RCK. In support of her position, she established that: (1) she worked for RCK as a sales representative; (2) RCK was beginning to grow in 2002; and (3) RCK's commission structure was such that a sales representative would earn a half percent stipend on the signing of a purchase and sales agreement, with the balance of a six percent gross sales commission being paid upon the obtaining of a building permit or variance.  (Def.'s Aff. ¶ 5(A); Def.'s Supplemental Aff. ¶ 7.)  She further produced five checks totaling $18,774, which she received as commissions from RCK primarily in December 2002.  (Def.'s Supplemental Aff. Ex. F.)  Reading the record in the light most favorable to the Defendant, there is a genuine issue of whether the 2002 Transfers were paid as legitimate commissions.  This fact is material because it would negate actual fraud and show that RCK received consideration for the 2002 Transfers to preclude a recovery under constructive fraud.  Although the evidence produced by the Defendant accounts for only a portion of the $48,600 at issue, it is nonetheless sufficient to raise a genuine issue as to the entire $48,600 given the facts established by the Defendant.  Thus, summary judgment is denied on the Plaintiff's avoidance claim for the 2002 Transfers.

### 2.    *Downpayment Funds*

It is undisputed that the Defendant and Kostandin purchased their Windham residence using the Downpayment Funds in September 2003. The Defendant alleges that the Downpayment Funds came from her and her family's savings. She further alleges that to the extent they came from RCK, such funds represent a return on her and her family's investment in RCK during previous years. The Plaintiff moves for summary judgment on the grounds that the Defendant's own evidence shows that the Downpayment Funds originated from RCK and that the undisputed facts establish fraud under section 545-A:4(I). For the following reasons, the Court grants partial summary judgment on this claim.

First, of the $183,853.27 constituting the Downpayment Funds, it is undisputed that RCK transferred $98,000 to the Defendant in September 2003.[5]  The record contains a cancelled certified check in the amount of $98,000 made payable to the Defendant, RCK, and Berge's Realty, together, dated September 4, 2003. The Defendant's exhibit states that the $98,000 at issue was "drawn out of RCK SO. NH Bank for home deposit" and deposited into her account. (Def.'s Supplemental Aff. Ex. E.)

Next, the Plaintiff established undisputed facts to show that the $98,000 transfer was fraudulent under section 545-A:4(I)(b). In September 2003, RCK was engaged in business, including business with George Kung who paid RCK $210,736 from March 2003 through January 2004 for a modular home. RCK's remaining assets were unreasonably small compared to its business, which is shown by the facts that all of its assets were seized in the summer of 2003 and the only asset recovered by the Plaintiff as of the petition date was a return of a deposit on certain real estate for approximately $15,000. (See Pl.'s Aff. ¶¶ 3 & 8.) In addition, RCK made the transfer without receiving a reasonably equivalent value because there is no evidence of any consideration in the record. Although the Defendant argues that the said funds represent a return on the savings that she and her family invested in RCK over the prior years, there is no genuine issue because she fails to offer credible evidence. See Fed. Deposit Ins. Corp., 904 F.2d at 742

---

[5] This $98,000 transfer was not part of the 2003 Transfers discussed earlier.

(providing that once the moving party has demonstrated that there is no triable issue of fact, the nonmoving party has the burden of showing a genuine material issue); Rodriquez-Pinto, 982 F.2d at 38 (stating that an issue is "genuine" when "the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party.").  Here, the Defendant merely alleges that at the time of RCK's formation in 1999, it was funded by her and Kostandin's savings in an amount exceeding $100,000.  She admits that records of her family's startup funds in RCK are no longer available.  (Def.'s Supplemental Aff. ¶ 3, Ex. A.)  Thus, there are no triable issues of fact concerning the $98,000 transfer, and the record supports a finding of fraud under section 545-A:4(I).  Further, the Plaintiff may recover from the Defendant because it is undisputed that she was the initial transferee.  See 11 U.S.C. § 550(a)(1).

Finally, as to the $85,853.27 remaining balance on the Downpayment Funds ($183,853.27 - $98,000), the Plaintiff fails to establish separate facts to show that RCK was the source of the said funds, where he bears the initial burden of showing an avoidable transfer.  For his allegation that RCK was the source, he relies on the fact that he has "not been able to uncover any other source for the Downpayment [F]unds."  (Pl.'s Aff.  ¶ 21.)  The Defendant alleges that she used her and her family's savings to pay the said balance.  There is a triable issue as to whether the balance of the Downpayment Funds originated from RCK.  Accordingly, partial summary judgment in the amount of $98,000 is granted on this claim.

### 3.    *Refinancing Proceeds*

With respect to the Refinancing Proceeds, the following facts are undisputed.  In March 2004, the Defendant refinanced the Haverhill property that she owned.  At the time of the refinancing, there was a second mortgage in the amount of $100,000 on the Haverhill property securing a promissory note that RCK executed and/or guaranteed in June 2003, which was inadvertently left out of the list of encumbrances to be repaid through the refinancing.[6]  This oversight caused New Century Mortgage to

---

[6] The circumstances surrounding the second mortgage on the Haverhill property are as follows: (1) Character Homes, LLC, previously owned the Haverhill property and was an entity managed by Kostandin; (2) on or about June 10, 2003, Character Homes, Kostandin, and RCK executed and/or

wire the Refinancing Proceeds in the amount of $100,000 directly into the Defendant's personal account on March 3, 2004.  (Pl.'s Aff. ¶¶ 27-29, Ex. B. ¶ 15.)  The Plaintiff moves for summary judgment on the grounds that the Defendant does not produce evidence to raise a material issue, where he has established facts to show actual and constructive fraud at the time she received the Refinancing Proceeds.  However, to prevail on this claim, the Plaintiff must show that RCK made the fraudulent transfer at issue.[7]  See NH RSA § 545-A:4(I).  Here, it is undisputed that RCK did not transfer the Refinancing Proceeds to the Defendant and that it did not own the Haverhill property when the equity was transferred to the Defendant.  Thus, the Plaintiff is not entitled to a judgment as a matter of law, and summary judgment is denied on this claim.

### C.    Count VI: Turnover of Estate Property

As stated above, the Court grants summary judgment on the avoidance claim for the 2003 Transfers in the amount of $220,522 and partial summary judgment on the avoidance claim for the Downpayment Funds in the amount of $98,000.  The Court denies summary judgment as to all other claims.  However, of the total $318,522 ($220,522 + $98,000) amount, the Plaintiff is entitled to a judgment of $193,522 ($318,522 - $125,000) on account of the settlement proceeds he received from the Debtors' former counsel.

In Count VI, the Plaintiff requests an order directing the Defendant to turn over all property subject to avoidance.  Section 542(a) provides that "an entity, other than a custodian, in possession, custody or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . .  shall deliver to the trustee, and account for, such property or the value of such property,

guaranteed a $100,000 promissory note that was secured by the subject second mortgage on the Haverhill property; (3) RCK did not have an interest in the Haverhill property or Character Homes; and (4) on March 2, 2004, Character Homes transferred the Haverhill property to the Defendant for $1 and the latter refinanced the property.

[7] It is worth noting that the Plaintiff does not allege that the obligation incurred by RCK as a result of the Opus Mortgage on June 10, 2003, was fraudulent.  See NH RSA § 545-A:4(I) (listing elements that render a "transfer made" or "obligation incurred" fraudulent).

unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). The Plaintiff is entitled to a turnover of $193,522 from the Defendant. Accordingly, summary judgment is granted on Count VI in that amount.

## CONCLUSION

For the reasons set out herein, the Court grants the motion for summary judgment in part and denies it in part, with a total judgment of $193,522 for the Plaintiff. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

DATED this 30th day of December, 2008, at Manchester, New Hampshire.


/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge

- 13 -